1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MISSION PRODUCE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ORGANIC ALLIANCE, INC., et al., <br><br> Defendants. | Case No. 15-CV-01951-LHK <br><br> **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 41 |

Before the Court is Plaintiff Mission Produce, Inc.'s ("Plaintiff") renewed motion for default judgment against Defendants Organic Alliance, Inc. ("Organic Alliance") and Parker Booth ("Booth"). Having considered Plaintiff's motion, the relevant law, and the record in this case, the Court hereby GRANTS Plaintiff's motion for default judgment.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff brings this case to enforce a reparation award by the U.S. Department of Agriculture ("USDA") as provided under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499g; for underlying violations of PACA, including PACA's trust provisions, under 7 U.S.C. §499e; for breach of contract; and for conversion.

United States District Court
Northern District of California

1    Plaintiff is a California corporation based in Oxnard, California and is in the business of

2   selling wholesale produce.  ECF No. 1 ("Compl.") ¶¶ 3, 16.  Plaintiff alleges that Organic Alliance

3   is a Nevada corporation with a principal place of business in Salinas, California and that Booth

4   "was an officer, director, and/or shareholder of" Organic Alliance.  *Id.* ¶¶ 4-5.  Plaintiff alleges

5   that Organic Alliance "was engaged in the handling of produce in interstate and/or foreign

6   commerce as a commission merchant, dealer and/or retailer in wholesale and jobbing quantities

7   and was therefore subject to the provisions of the" PACA.  *Id.* ¶ 15.  Plaintiff further alleges that

8   Organic Alliance operated under PACA license number 20090314.  *Id.*

9    Plaintiff alleges that in early 2013, in a series of transactions, Plaintiff sold and shipped

10  perishable agricultural commodities to Organic Alliance for which Organic Alliance agreed to pay

11  Plaintiff at least $79,306.00.  *Id.* ¶ 16.  For each transaction, Plaintiff allegedly forwarded Organic

12  Alliance an invoice setting forth the amount owed.  Compl. ¶ 17.  According to Plaintiff, each

13  such invoice indicated that Organic Alliance is obligated to pay Plaintiff a finance charge of 1.5%

14  per month (18% annually) on all past due accounts.  *Id.* ¶ 69; ECF No. 41-4 Ex. 1.  Each invoice

15  also stated that "[s]hould any action be commenced between the parties to this contract concerning

16  the sums due . . . the prevailing party in such action shall be entitled to . . . the actual attorney's

17  fees and costs in bringing such action."  ECF No. 41-4 Ex. 1; *see also* Compl. ¶ 70.

18   In November 2013, Plaintiff filed an administrative complaint against Organic Alliance

19  with the USDA seeking an award of the balance due to Plaintiff.[1]  Compl. ¶ 20, Ex. 1 (ECF No.

20  1-1).  Organic Alliance defaulted in the USDA action, Compl. ¶ 21, and on January 14, 2014, the

21  USDA issued a reparation order in favor of Plaintiff.  *Id.* ¶ 22, Ex. 2 (ECF No. 1-2).  The USDA

22  awarded Plaintiff $73,306.00, plus interest at the rate of 0.13% per annum from March 1, 2013

23  until paid, plus the $500.00 filing fee.  *Id.*

24

25  _____
[1] Plaintiff based its USDA claim on four invoices: (1) Invoice No. 535460 for $35,699.25;
(2) Invoice No. 537175 for $33,782.00; (3) Invoice No. 540011 for $3,577.25; and (4) Invoice No.
26  536132 for $6,247.50.  *See* ECF No. 1-1 (USDA Compl.) Ex. 5 (summary of claims).  The total
value of these invoices was $79,306.00.  At the time Plaintiff filed its USDA complaint, Organic
27  Alliance had made a partial payment of $6,000 towards Invoice No. 536132, so $73,306.00
remained due.  *See id.*; ECF No. 41-3 (Albers Decl.) ¶¶ 8–9.

28

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1   After the USDA issued its reparation order, Organic Alliance paid Plaintiff $247.50 to

2   fulfill Organic Alliance's obligations under Invoice No. 536132, one of the four invoices that were

3   before the USDA.  *See* ECF No. 41-3 (Alders Decl.) ¶¶ 8-9.  Defendants still owe Plaintiff a

4   principal amount of $73,058.50.  *Id.* ¶ 10.

5   **B.  Procedural History**

6   Plaintiff filed this PACA action against Defendants Organic Alliance, Booth, Carmen

7   Grillo, Mark Klein, Alicia Kriese, Michael Rosenthal, and Barry Brookstein on April 30, 2015.

8   ECF No. 1.  Plaintiff voluntarily dismissed its claims against Defendants Rosenthal and

9   Brookstein without prejudice on June 1, 2015.  ECF No. 15.  Plaintiff voluntarily dismissed its

10  claims against Grillo, Klein, and Kriese without prejudice on July 9, 2015.  ECF No. 26.  Thus, the

11  only Defendants remaining in this case are Organic Alliance and Booth.

12  On June 23, 2015, Plaintiff moved for entry of default against Organic Alliance and Booth.

13  ECF No. 18. The Clerk of the Court entered default against these Defendants on July 9, 2015.

14  ECF No. 25.

15  Plaintiff filed a motion for default judgment against Organic Alliance and Booth on August

16  27, 2015.  ECF No. 27.  This Court denied Plaintiff's motion for default judgment on November

17  25, 2015 because Plaintiff had not adequately shown that Plaintiff served Organic Alliance and

18  Booth with the summons and complaint in this matter.  ECF No. 35.  Specifically, Plaintiff had

19  submitted proofs of service that erroneously indicated that the same process server had served both

20  Organic Alliance and Booth in different cities in different states at the exact same time.  *Id.* at 2.

21  The Court's November 25, 2015 order also requested supplemental briefing regarding jurisdiction

22  and support for the amount of money owed to Plaintiff.  *Id.* at 2-3.

23  On December 2, 2015, Plaintiff submitted an amended proof of service for Organic

24  Alliance and a declaration from the process server.  ECF Nos. 37-38.  The declaration states that

25  on May 18, 2015, the process server effected service of process on (1) Booth in his individual

26  capacity; and (2) Organic Alliance, by serving Booth—president of Organic Alliance—at Booth's

27  address in Shelton, Washington.  ECF No. 38 at 2.  The declaration explains that the original proof

28

United States District Court
Northern District of California

3

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1   of service for Organic Alliance, ECF No. 17, incorrectly indicated that Booth was served in his

2   capacity as president of Organic Alliance at an address in Salinas, California. ECF No. 38 at 2.

3   Plaintiff did not submit an amended proof of service for Booth.  *See* ECF No. 16.

4           On December 14, 2015, Plaintiff filed the instant renewed motion for default judgment

5   against Defendants Organic Alliance and Booth.  ECF No. 41.  No opposition was filed, and the

6   time to do so has now passed.

7   **II.  LEGAL STANDARD**

8           Pursuant to Rule 55(b)(2), the court may enter a default judgment when the clerk, under

9   Rule 55(a), has previously entered the party's default. Fed. R. Civ. P. 55(b).  "The district court's

10  decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d

11  1089, 1092 (9th Cir. 1980).  Once the Clerk of Court enters default, all well-pleaded allegations

12  regarding liability are taken as true, except with respect to damages.  *See Fair Hous. of Marin v.*

13  *Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18

14  (9th Cir. 1987); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)

15  ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments.").  "In

16  applying this discretionary standard, default judgments are more often granted than denied."

17  *Philip Morris*, 219 F.R.D. at 498 (citation omitted).

18          "Factors which may be considered by courts in exercising discretion as to the entry of a

19  default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of

20  plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in

21  the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

22  due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

23  Procedure favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.

24  1986).

25  **III. DISCUSSION**

26      **A.  Jurisdiction**

27          "When entry of judgment is sought against a party who has failed to plead or otherwise

28
4
Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1   defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

2   matter and the parties.  A judgment entered without personal jurisdiction over the parties is void."

3   *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).  The Court thus begins by

4   evaluating subject matter jurisdiction and personal jurisdiction.

5           **1.  Subject Matter Jurisdiction**

6           The Court finds that the exercise of subject matter jurisdiction over this case is proper.

7   "[A] federal court may exercise federal-question jurisdiction if a federal right or immunity is an

8   element, and an essential one, of the plaintiff's cause of action."  *Provincial Gov't of Marinduque*

9   *v. Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009) (citation omitted); *see also* 28 U.S.C.

10  § 1331.  Plaintiff asserts claims under PACA and California state law.  *See* Compl. ¶¶ 19–70.  As

11  the PACA causes of action raise federal questions, the Court may properly exercise subject matter

12  jurisdiction over the PACA causes of action.  Because the state law claims arise out of the same

13  factual allegations as the PACA causes of action, the Court exercises supplemental jurisdiction

14  over those claims.  *See* 28 U.S.C. § 1367(a).

15          **2.  Personal Jurisdiction**

16          To determine the propriety of asserting personal jurisdiction over a nonresident defendant,

17  the Court examines whether such jurisdiction is permitted by the applicable state's long-arm

18  statute and comports with the demands of federal due process.  *Harris Rutsky & Co. Ins. Servs.,*

19  *Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003).  Because California's long-

20  arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements,

21  the jurisdictional analyses under state law and federal due process are the same.  *See* Cal. Civ.

22  Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not

23  inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v.*

24  *Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  For a court to exercise personal

25  jurisdiction over a nonresident defendant consistent with due process, that defendant must have

26  "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does

27  not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*,

28

5

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1   326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In addition, "the

2   defendant's 'conduct and connection with the forum State' must be such that the defendant

3   'should reasonably anticipate being haled into court there.'"  *Sher v. Johnson*, 911 F.2d 1357,

4   1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

5   (1980)).

6          A court may exercise either general or specific jurisdiction over a nonresident defendant.

7   *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).  General jurisdiction exists where a

8   nonresident defendant's activities in the state are "continuous and systematic" such that said

9   contacts approximate physical presence in the forum state.  *See Schwarzenegger v. Fred Martin*

10  *Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted).  Where general jurisdiction is

11  inappropriate, a court may still exercise specific jurisdiction where the nonresident defendant's

12  "contacts with the forum give rise to the cause of action before the court."  *Doe v. Unocal Corp.*,

13  248 F.3d 915, 923 (9th Cir. 2001).

14         Additionally, for the Court to exercise personal jurisdiction over a defendant, the defendant

15  must have been served in accordance with Federal Rule of Civil Procedure 4.  *See Jackson v.*

16  *Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with

17  Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction." (footnote

18  omitted)).

19              **a.  Organic Alliance**

20         As to Organic Alliance, the Court concludes that the exercise of general jurisdiction is

21  appropriate.  Plaintiff has alleged that Organic Alliance has its principal place of business in

22  Salinas, California.  Compl. ¶ 4.  Plaintiff further alleges that it delivered the produce at issue to

23  Organic Alliance in Salinas, California.  ECF No. 41-3 Ex. 1 (invoices).  Organic Alliance not

24  only "[did] business with California," but in fact "[did] business in California."  *Bancroft &*

25  *Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (contacts approximating

26  physical presence in California, such as doing business in California, support the exercise of

27  general jurisdiction).  As such, Organic Alliance has "substantial" and "continuous and

28

United States District Court
Northern District of California

6

1    systematic" contacts with California as well as a "physical presence" in California that support the

2    Court's exercise of general jurisdiction.  *See Schwarzgenner*, 374 F.3d at 801 (general jurisdiction

3    exists where a defendant has "continuous and systematic general business contacts . . . that

4    approximate physical presence in the forum state" (citations omitted)).  Additionally, Plaintiff

5    effected service of process upon Organic Alliance by having the summons and the complaint

6    served upon Organic Alliance's president, Booth.  *See* ECF No. 37 (amended proof of service

7    upon Organic Alliance); ECF No. 38 (declaration from process server); ECF No. 41-2 Ex. 4 (Cal.

8    Sec. of State web page listing Parker Booth as agent for service of process for Organic Alliance);

9    Fed. R. Civ. P. 4(h)(1)(B) (permitting service on a corporation by delivering a copy of the

10   summons and of the complaint to an officer, a managing or general agent).  Based on the amended

11   proof of service and declaration from the process server, there is no indication in the record that

12   this service was improper.

13            **b.  Parker Booth**

14            The Court also concludes that the exercise of at least specific personal jurisdiction over

15   Booth is appropriate. Plaintiff alleges that Booth was a shareholder, officer, and/or director of

16   Organic Alliance, and in that capacity, Booth was responsible for the daily management and

17   control of Organic Alliance.  Compl. ¶¶ 5, 11.  Furthermore, Plaintiff alleges that Booth controlled

18   or was in a position to control the disposition of Organic Alliance's assets so as to ensure that

19   there were sufficient assets to satisfy all outstanding PACA trust obligations such as the obligation

20   allegedly owed to Plaintiff.  *See id.* ¶¶ 45–49.  Furthermore, Booth was registered with the

21   California Secretary of State as the agent for service of process for Organic Alliance at an address

22   in Salinas, California in this District.  ECF No. 41-2 Ex. 4.  While it is true that Booth's "contacts

23   with California are not to be judged according to [his] employer's activities there," the Ninth

24   Circuit has "reject[ed] the suggestion that employees who act in their official capacity are

25   somehow shielded from suit in their individual capacity."  *Davis v. Metro Prods., Inc.*, 885 F.2d

26   515, 521 (9th Cir. 1989).  Here, Booth was registered as Organic Alliance's agent in this District.

27   Finally, Booth was personally served with process in this case pursuant to Federal Rule of Civil

28

7

Procedure 4(e)(2)(A).  ECF No. 16 (proof of service upon Booth); ECF No. 38 (declaration from process server).  As with Organic Alliance, there is no indication in the record that service on Booth was improper.

### B.  Whether Default Judgment is Proper

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction over Defendants Organic Alliance and Booth is appropriate, the Court now turns to the *Eitel* factors to determine whether entry of default judgment against Organic Alliance and Booth is warranted.

#### 1.  First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant.  Absent a default judgment, Plaintiff in this case will not obtain payment to which it is entitled for produce Plaintiff has already provided to Defendants.  Thus, the first factor weighs in favor of granting default judgment.

#### 2.  Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in the Complaint.  These two factors are often analyzed together.  *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pleaded allegations regarding liability.  *See Fair Hous. of Marin*, 285 F.3d at 906.  The Court will therefore consider the merits of Plaintiff's claims and the sufficiency of the Complaint together.

Plaintiff brings four claims arising out of PACA, a claim for breach of contract, and a claim for conversion.[2]  The Court first addresses the merits and sufficiency of Plaintiff's PACA claims and then turns to the merits and sufficiency of the breach of contract and conversion

---

[2] Plaintiff also asserts claims for unjust enrichment; declaratory relief; and recovery of fees, costs, and interest.  In the context of the Complaint, these last three claims appear to be requests for particular forms of relief and not independent causes of action, notwithstanding the fact that Plaintiff labeled them as causes of action.  Accordingly, the Court does not analyze these three claims separately.

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

claims.

### a. PACA Claims

The first, third, fourth, and fifth causes of action in the complaint arise under PACA.  The first cause of action is a claim against Organic Alliance for enforcement of the reparation award issued by the U.S. Secretary of Agriculture on January 14, 2014.  Compl. ¶¶ 19–29.  The third cause of action is a claim against all Defendants for enforcement of the statutory trust provisions of PACA.  *Id.* ¶¶ 33–40.  The fourth cause of action is a claim against all Defendants for failure to account and pay promptly under PACA.  *Id.* ¶¶ 41–43.  The fifth cause of action is a claim against Booth for breach of fiduciary duty with regard to assets in the PACA trust.  *Id.* ¶¶ 44–51.

PACA protects sellers of perishable agricultural goods by requiring a merchant, dealer, or retailer of perishable produce to hold in trust proceeds from the sale of the perishable produce, and food derived from that produce, for the benefit of all unpaid suppliers.  7 U.S.C. § 499e(c)(2); *Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1104–05 (9th Cir. 2001).  District courts have the power to enforce PACA reparation awards by the U.S. Secretary of Agriculture:

> If any commission merchant, dealer, or broker does not pay the reparation award within the time specified in the Secretary's order, the complainant . . . may within three years of the date of the order file in the district court of the United States for the district . . . in which is located the principal place of business of the commission merchant, dealer, or broker . . . a petition setting forth briefly the causes for which he claims damages.

7 U.S.C. § 499g(b).  Enforcement proceedings in district court "shall proceed in all respects like other civil suits for damages, except that the findings and orders of the Secretary shall be prima-facie evidence of the facts therein stated."  *Id.*; *see also Sierra Kiwi, Inc. v. Rui Wen, Inc.*, No. 2:13-CV-1334-LKK, 2013 WL 5955066, at *5 (E.D. Cal. Nov. 7, 2013) (recommending that court enter default judgment for damages in the amount ordered by the Secretary of Agriculture).

Under PACA, "a produce dealer holds produce-related assets as a fiduciary" in the statutory trust "until full payment is made to the produce seller."  *In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 939 (9th Cir. 1992).  "The trust automatically arises in favor of a produce seller upon delivery of produce and is for the benefit of all unpaid suppliers or sellers involved in

9

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1   the transaction until full payment of the sums owing has been received." *Id.* (citation omitted); *see*

2   *also* 7 U.S.C. § 499e(c)(2).  There are five elements to a PACA cause of action:

3                   (1) the commodities sold were perishable agricultural commodities,
                    (2) the purchaser was a commission merchant, dealer, or broker, (3)
4                   the transaction occurred in contemplation of interstate or foreign
                    commerce, (4) the seller has not received full payment on the
5                   transaction, and (5) the seller preserved its trust rights by including
                    statutory language referencing the trust on their invoices.
6

7   *Beachside Produce, LLC v. Flemming Enters., LLC*, No. C-06-04957 JW, 2007 WL 1655554, at

8   *2 (N.D. Cal. June 6, 2007) (citing 7 U.S.C. § 499e(c)(3), (4); 7 C.F.R. § 46.46(c), (f)).

9           Plaintiff satisfies the first PACA element because Plaintiff alleges that it sold perishable

10  agricultural commodities to Defendants.  Compl. ¶ 16.

11          For the second element, PACA defines a "dealer" as "any person engaged in the business

12  of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity

13  in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6).  Furthermore, "individuals associated

14  with corporate defendants may be liable under a PACA trust theory." *Sunkist Growers, Inc. v.*

15  *Fisher*, 104 F.3d 280, 282 (9th Cir. 1997).  "[I]ndividual shareholders, officers, or directors of a

16  corporation who are in a position to control PACA trust assets . . . may be held personally liable

17  under the Act." *Id.* at 283.  "If deemed a PACA 'dealer,' an individual is liable for his own acts,

18  omissions, or failures while acting for or employed by any other dealer." *Id.* (citing 7 U.S.C.

19  § 499e(a)).

20          Plaintiff satisfies the second element as to Organic Alliance and Booth.  Plaintiff alleges

21  that both Organic Alliance and Booth were dealers or retailers under PACA.  Compl. ¶ 13.

22  Plaintiff alleges that Organic Alliance "was engaged in the handling of produce in interstate and/or

23  foreign commerce as a commission merchant, dealer and/or retailer in wholesale and jobbing

24  quantities . . . operating under PACA license no. 20090314." *Id.* ¶ 15.  Plaintiff also alleges that

25  Organic Alliance purchased produce from Plaintiff.  *Id.* ¶¶ 16–18.  Finally, the Secretary of

26  Agriculture found that Organic Alliance "was licensed or was subject to license under the PACA

27  at the time of the transaction or transactions involved in" the reparation proceeding.  ECF No. 1-2.

28
    Case No. 15-CV-01951-LHK
    ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1    As to Booth, Plaintiff alleges that Booth was an officer, director, and/or shareholder of

2    Organic Alliance and was in a position to control Organic Alliance at the time that Organic

3    Alliance purchased produce from Plaintiff.  *See* Compl. ¶¶ 5, 45–49.  These allegations are

4    sufficient to establish that Booth exercised control over Organic Alliance and its assets, such that

5    Booth may be held personally liable for the PACA violations.  *See Sunkist Growers*, 104 F.3d at

6    283 ("[I]ndividual shareholders, officers, or directors of a corporation who are in a position to

7    control PACA trust assets . . . may be held personally liable under the Act.").

8    Courts have held that the third PACA element is satisfied where "the commodities

9    involved are the type typically sold in interstate commerce" and where the seller involved is "the

10   type that Congress intended to protect by implementing PACA."  *Greenfield Fresh, Inc. v. Berti*

11   *Produce-Oakland, Inc.*, No. 14-cv-01096-JSC, 2014 WL 5700695, at *3 (N.D. Cal. Nov. 3, 2014)

12   (quoting *Oregon Potato Co. v. Seven Stars Fruit Co., LLC*, No. C12-0931JLR, 2013 WL 230984,

13   at *5 (W.D. Wash. Jan. 22, 2013)).  Here, Plaintiff has alleged that all perishable agricultural

14   commodities that are the subject of this action were purchased and sold in or in contemplation of

15   the course of interstate and/or foreign commerce.  Compl. ¶ 35.  The Secretary of Agriculture also

16   found (by adopting Plaintiff's allegations as factual findings) that Plaintiff sold Organic Alliance

17   four truck shipments of Mexican grown avocadoes in the course of interstate commerce.  *See* ECF

18   No. 1-2 (Default Order); ECF No. 1-1 (Complaint for Reparations) ¶ 4.  In a declaration,

19   Plaintiff's credit manager also stated that at all times relevant to the Complaint, Plaintiff was

20   licensed by the USDA under PACA license number 19831164.  ECF No. 41-4 ¶ 7.  Plaintiff has

21   satisfied the third element.

22   Plaintiff alleges that Plaintiff did not receive prompt and full payment from Defendants for

23   the produce sold to Defendants.  Compl. ¶¶ 18, 42.  This allegation satisfies the fourth element of

24   a PACA cause of action.  Plaintiff further alleges that despite the fact that the USDA reparation

25   award required payment to Plaintiff by February 13, 2014, Organic Alliance still has not paid

26   Plaintiff the amount owed.  Compl. ¶¶ 23–25.

27   Plaintiff additionally attaches to the motion for default judgment the invoices Plaintiff sent

28   

11

1  to Organic Alliance.  *See* ECF No. 41-3 Ex. 1.  These invoices include the statutory language

2  regarding the PACA trust, *see id.*, thus satisfying the fifth PACA element.

3      The findings above are consistent with the Secretary of Agriculture's conclusion that

4  Organic Alliance violated 7 U.S.C. § 499b.  *See* ECF No. 1-2.

5      Furthermore, Plaintiff's claim against Booth for breach of fiduciary duty is cognizable

6  under PACA because "[a]n individual who is in the position to control the trust assets and who

7  does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable

8  for that tortious act."  *Sunkist Growers*, 104 F.3d at 283.  Thus, a PACA trust "imposes liability on

9  a trustee, whether a corporation or a controlling person of that corporation, who uses the trust

10  assets for any purpose other than repayment of the supplier."  *Id.*  Here, Plaintiff has alleged that

11  Booth had a fiduciary duty to maintain sufficient PACA trust assets to pay all PACA trust claims

12  as they became due and that Booth instead transferred or diverted the trust assets to his own use

13  and/or to unknown third parties.  Compl. ¶¶ 39, 49.

14      Because Plaintiff has sufficiently alleged the elements for Plaintiff's four PACA causes of

15  action, the Court concludes that Plaintiff has sufficiently stated claims against Organic Alliance

16  for enforcement of the USDA's reparation award, against Organic Alliance and Booth for

17  enforcement of the PACA trust and for violation of PACA by failing to pay promptly, and against

18  Booth for PACA violations for breach of fiduciary duty related to the PACA trust assets.

19          **b.  Breach of Contract**

20      Plaintiff's second cause of action is for breach of contract against Organic Alliance.

21  Compl. ¶¶ 30–32.  The elements of breach of contract under California law are: "(1) the contract,

22  (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the

23  resulting damages to plaintiff."  *Reichert v. Gen'l Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

24  Plaintiff alleges that Plaintiff had a contract with Organic Alliance for the purchase of produce,

25  that Plaintiff performed by delivering the produce to Organic Alliance, that Organic Alliance

26  breached the contract by not paying for the produce, and that Plaintiff has been damaged by

27  Organic Alliance's failure to pay.  *See* Compl. ¶¶ 16–18, 32.  This is sufficient to state a claim for

28

12

1    breach of contract.

2            **c.   Conversion**

3            Plaintiff's eighth cause of action is for conversion against Organic Alliance and Booth.

4    Compl. ¶¶ 60–63.  Under California law, "[t]he elements of a conversion claim are (1) the

5    plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the

6    defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."

7    *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (citing *Oakdale Vill. Grp. v.*

8    *Fong*, 43 Cal. App. 4th 539, 543-44 (1996)).  Plaintiff alleges that Plaintiff was and currently is

9    entitled to possession of a specific principal sum, Compl. ¶ 61, of which $73,058.50 remains due,

10   ECF No. 42 at 1.  Plaintiff further alleges that Defendants Organic Alliance and Booth have failed

11   to turn over the amount due to Plaintiff and that Defendants have "diverted the accounts

12   receivable, assets of the PACA trust, and monies due and owing to Plaintiff to themselves and to

13   other third parties."  Compl. ¶ 62.  Plaintiff alleges that Plaintiff has suffered damages from this

14   conduct.  Plaintiff's allegations are sufficient to state a claim for conversion.

15           Because Plaintiff has sufficiently stated claims for violations of PACA, for breach of

16   contract, and for conversion, the second and third *Eitel* factors weigh in favor default judgment.

17           **3.   Fourth *Eitel* Factor**

18           Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in

19   relation to the seriousness of Defendant's conduct."  *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp.

20   2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471–72.  "The Court considers

21   Plaintiff's declarations, calculations, and other documentation of damages in determining if the

22   amount at stake is reasonable."  *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-CV-03594-

23   JSW, 2007 U.S. Dist. LEXIS 100237, at *33 (N.D. Cal. Mar. 22, 2007), *adopted by* 2007 WL

24   1545173 (N.D. Cal. May 29, 2007).  Default judgment is disfavored when a large amount of

25   money is involved or unreasonable in light of the potential loss caused by the defendant's actions.

26   *See id.*

27

28
                                                    13
     Case No. 15-CV-01951-LHK
     ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1

2

3

4

Plaintiff seeks to recover $73,058.50 for unpaid produce,[3] at least $37,072.23 in interest, $10,436.50 in attorney's fees, and $2,586.25 in costs.  Although not insubstantial sums, the amount that Plaintiff requests is reasonable in light of the fact that Plaintiff shipped produce to Defendants more than three years ago for which Plaintiff still has not received full payment.

5

6

### 4.  Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

7

8

9

10

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case.  Organic Alliance and Booth have failed to make appearances in this case.  The Court therefore takes the allegations in the complaint as true.  *Fair Hous.*, 285 F.3d at 906.  Given that posture, the Court finds that disputes of material facts are unlikely.

11

12

13

14

15

16

17

18

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect.  A summons was issued to Booth on April 30, 2015, ECF No. 8, and a proof of service was filed on June 3, 2015, ECF No. 16.  A summons was issued to Organic Alliance on April 30, 2015, ECF No. 7, and an amended proof of service was filed on December 2, 2015, ECF No. 37.  *See also* ECF No. 38 (declaration from process server explaining that Booth and Organic Alliance were served on May 18, 2015).  Nothing in the record before the Court indicates that the service as to Organic Alliance or Booth was improper.  Organic Alliance and Booth, however, have not appeared in this case.  Nothing before the Court suggests that Defendants' failure to appear was the result of excusable neglect.

19

20

The fifth and sixth *Eitel* factors thus favor entry of default judgment.

21

### 5.  Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

22

23

24

25

While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself.  *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez,*

26

27

28

---

[3] As noted above, the USDA awarded $73,306.00, but after the USDA issued its reparation order, Organic Alliance paid Plaintiff $247.50 to fulfill Organic Alliance's obligations under one of the four invoices that were before the USDA.  *See* ECF No. 41-3 (Alders Decl.) ¶¶ 8-9.

14

*United States District Court*
*Northern District of California*

1   No. 12-CV-06133-LHK, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014).  Although Organic

2   Alliance and Booth were served over 10 months ago, Organic Alliance and Booth have never

3   made appearances nor challenged the entry of default against them.  The likelihood of the case

4   proceeding to a resolution on the merits is unlikely.  The Court finds that the seventh *Eitel* factor is

5   outweighed by the other six factors that favor default judgment.  *See Hernandez*, 2014 WL

6   3962647, at *9 (seventh *Eitel* factor outweighed by remaining six factors where defendants failed

7   to appear for over a year and a half prior to the default judgment).  The Court therefore finds that

8   default judgment is appropriate in this case.

9       **C. Damages**

10      A plaintiff seeking default judgment "must also prove all damages sought in the

11  complaint."  *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld*

12  *Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)).  Federal Rule of Civil Procedure 55 does not

13  require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary

14  basis for the damages awarded in the default judgment.  *See Action SA v. Marc Rich & Co.*, 951

15  F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters.,*

16  *Inc. v. LMC Int'l, Inc.*, No. 98-CV-0658A(F), 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

17  Plaintiff has provided supporting declarations and an amortization schedule detailing Plaintiff's

18  requested damages, along with invoices showing the original amounts due for the produce shipped

19  by Plaintiff.  *See* ECF No. 41-2 (Monroe Decl.) ¶¶ 7–9, Ex. 1 (amortization schedule); ECF No.

20  41-3 (Albers Decl.), Ex. 1 (invoices); ECF No. 41-4 (Whitehead Decl.).  Plaintiff also submitted

21  with Plaintiff's complaint a copy of the USDA's January 14, 2014 order that awarded reparations

22  to Plaintiff.  ECF No. 1-2.  Plaintiff has provided an additional declaration and timesheets

23  supporting Plaintiff's request for attorney's fees and costs.  *See* ECF No. 41-2 (Monroe Decl.)

24  ¶¶ 10–15, Ex. 2 (timesheets).

25      Plaintiff requests damages for the invoice value of the unpaid produce, interest on the

26  invoice value of the unpaid produce, and attorney's fees and costs.

27      **1. Unpaid Produce**

28

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

*United States District Court*
*Northern District of California*

1       Under PACA, a dealer who violates its provisions "shall be liable to the person or persons

2   injured thereby for the full amount of damages . . . sustained in consequence of such violation."  7

3   U.S.C. § 499e(a).  Plaintiff has submitted three invoices showing that Plaintiff shipped produce

4   with an invoice value of $73,058.50 to Organic Alliance: (1) Invoice No. 535460 for $35,699.25;

5   (2) Invoice No. 537175 for $33,782.00; and (3) Invoice No. 540011 for $3,577.25.  ECF No. 41-3

6   Ex. 1.  Plaintiff's chief financial officer Tim Albers submitted a declaration indicating that

7   Plaintiff has not received the $73,058.50 due for these invoices.[4]  ECF No. 41-3 (Albers Decl.)

8   ¶ 10.  The Court finds that Plaintiff's invoices and declaration are sufficient to establish Plaintiff's

9   entitlement to $73,058.50 for the remaining invoice value of the unpaid produce.

10          **2.  Interest, Attorney's Fees, and Costs**

11      The Ninth Circuit has held that, in addition to the invoice value of unpaid produce, PACA

12  permits a plaintiff to recover prejudgment interest as well as attorney's fees and costs if the

13  contract between the plaintiff and the defendant stated that the defendant would be liable for

14  interest, attorney's fees, and costs.  *Middle Mountain Land & Produce Inc. v. Sound Commodities*

15  *Inc.*, 307 F.3d 1220, 1224–25 (9th Cir. 2002); *see also Greenfield Fresh*, 2014 WL 5700695, at

16  *4-5 (holding that a PACA plaintiff was entitled to prejudgment interest, attorney's fees, and costs

17  based on the contract between the plaintiff and the defendant).  The statute that allows a plaintiff

18  to enforce a USDA reparation award in district court also allows the prevailing plaintiff to collect

19  "a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit."  7 U.S.C.

20  § 499g(b).

21      In this case, Plaintiff alleges that its contract with Organic Alliance provided that Organic

22  Alliance would be liable for interest at 18% per year on any overdue payments as well as for

23  attorney's fees and costs associated with recovering any overdue payments.  To support Plaintiff's

24  allegation, Plaintiff points to the invoices Plaintiff sent to Organic Alliance, all of which include

25

26  _____

27  [4] Mr. Albers explains that a fourth invoice, number 536132, which was attached to Plaintiff's
    complaint to the USDA, was eventually paid by Organic Alliance.  ECF No. 41-3 ¶¶ 8–9.
    Accordingly, invoice number 536132 plays no role in the damages calculations in this order.

28
    Case No. 15-CV-01951-LHK
    ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1    the following language:

2              Should any action be commenced between the parties to this
       contract concerning the sums due hereunder or the rights and duties
3       of any party hereto or the interpretation of this contract, the
       prevailing party in such action shall be entitled to, in addition to
4       other relief as may be granted, an award as and for the actual
       attorney's fees and costs in bringing such action and/or enforcing
5       any judgement granted therein.

6              A FINANCE CHARGE CALCULATED AT THE RATE OF 1.5%
       PER MONTH (18% ANNUALLY) WILL BE APPLIED TO ALL
7       PAST DUE ACCOUNTS.

8    ECF No. 41-3 Ex. 1.  The Ninth Circuit in *Middle Mountain* declined to reach the issue of whether

9    invoices were sufficient to establish a contractual right to interest, attorney's fees, and costs and

10   instead remanded the issue to the district court.  *See* 307 F.3d at 1225.  In other contexts, however,

11   the Ninth Circuit has held that terms in an invoice for the sale of goods are included in the parties'

12   contract.  *See United States ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters.*, 74 F.3d

13   972, 976 (9th Cir. 1996) (awarding concrete suppliers prejudgment interest based on the terms in

14   the supplier's invoices).  Other courts in this District have determined that contractual language on

15   invoices is sufficient in PACA cases to establish contractual obligations, including obligations to

16   pay prejudgment interest, attorney's fees, and costs.  *See, e.g.*, *Greenfield Fresh*, 2014 WL

17   5700695, at *4–*5 (language on invoices sufficient to establish contractual right to collect

18   prejudgment interest, attorney's fees, and costs); *C.H. Robinson Co. v. Marina Produce Co.*, No.

19   C 05-04032-WHA, 2007 WL 39311, at *4 (N.D. Cal. Jan. 4, 2007) (same).  The Court concludes

20   that Plaintiff's invoices are sufficient to establish that Plaintiff is entitled to collect prejudgment

21   interest, attorney's fees, and costs from Defendants.

22              **a.  Interest**

23              Plaintiff requests $37,072.23 in prejudgment interest through December 14, 2015, plus

24   $36.03 per day from December 14, 2015 through the date of judgment.  ECF No. 42 at 10–11.

25   Plaintiff also requests post-judgment interest at the rate of 18% per year on all unpaid principal

26   sums due.  *Id.*  In support of this request, Plaintiff provides an amortization schedule calculating

27   interest at 18% per year as provided for in Plaintiff's invoices, which, when divided by 365 days

28
                                                         17

United States District Court
Northern District of California

1  in a year amounts to 0.04932% per day.  *See* ECF No. 41-2 (Monroe Decl.) ¶¶ 8-9, Ex. 1.

2  Plaintiff's amortization schedule shows that as of December 15, 2015—the day *after* Plaintiff filed

3  its renewed motion for default judgment—Defendants would have had to pay $110,130.73 to fully

4  repay the debt to Plaintiff.  Of this amount, $73,058.50 represents unpaid principal and $37,072.23

5  represents accrued finance charges.  *See* ECF No. 41-2 ¶ 9, Ex. 1.[5]  Moreover, applying the

6  0.04932% daily rate to the principal amount of $73,058.50 yields $36.03 per day, as Plaintiff has

7  requested.  The Court finds that Plaintiff's calculations are sufficient to establish Plaintiff's

8  entitlement to $37,072.23 for prejudgment interest on the invoice value of the unpaid produce

9  through December 15, 2015.[6]  Moreover, Plaintiff has shown that Plaintiff is entitled to an

10  additional $3,603.00 in prejudgment interest, calculated as $36.03 per day for each of the 100 days

11  between December 15, 2015 and the date of this order, March 24, 2016.  Thus, Plaintiff is entitled

12  to $40,675.23 in prejudgment interest.  Furthermore, the Court finds it appropriate to award post-

13  judgment interest at the contractual rate of 18% per annum on all unpaid principal sums due until

14  fully paid.

15            The fact that the USDA awarded a lower interest rate does not compel this Court to reduce

16  the amount of interest awarded to Plaintiff.  In the January 14, 2014 reparation award that Plaintiff

17  now seeks to enforce, the Secretary of Agriculture awarded only 0.13% annual interest to Plaintiff,

18  not the 18% annual rate that Plaintiff now requests.  ECF No. 1-2.  The Secretary of Agriculture

19  used the rate equal to the weekly average 1-year constant maturity Treasury yield, as published by

20  the Board of Governors of the Federal Reserve System, for the calendar week preceding the date

21  of the order.  ECF No. 1-2 (citing 28 U.S.C. § 1961).  Plaintiff points out that in at least one

22  decision, the USDA awarded an 18% interest rate, which was higher than the interest rate

23  available under 28 U.S.C. § 1961, based on a contract between the parties.  *See* ECF No. 42 at 13

---

[5] While Paragraph 9 of the Monroe declaration, which explains these calculations, appears to have
errors regarding the total amount due ($106,167.56 vs. $110,130.73) and the date of calculation
(Dec. 14, 2015 vs. Dec. 15, 2015), the Court was able to replicate the calculations on Plaintiff's
amortization schedule, ECF No. 41-2 Ex. 1, using a date of December 15, 2015.
[6] As noted above, Plaintiff's amortization schedule ran through December 15, 2015, not the
December 14, 2015 date recited in Plaintiff's motion.

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1   (citing ECF No. 42-1, Decision and Order, *H.P. Skolnick, Inc. v. California Fruit Markets, Inc.*,

2   PACA Dkt. No. R-07-105 (Apr. 9, 2008)).   In the instant case, it appears that Plaintiff simply did

3   not seek 18% interest from the Secretary of Agriculture, even though Plaintiff may have been

4   entitled to do so.

5        While Plaintiff has not cited any authority for the proposition that a district court can

6   award interest at a rate higher than the rate awarded by the USDA, the Ninth Circuit has ruled that

7   "a district court has broad discretion to award prejudgment interest to PACA claimants." *Middle*

8   *Mountain*, 307 F.3d at 1225–26.   Moreover, this Court and other courts in this District have

9   awarded 18% annual interest in similar PACA cases.   *See, e.g.*, *Tom Ver LLC v. Organic All., Inc*,

10   No. 13-CV-03506-LHK, 2015 WL 6957483, at *12 (N.D. Cal. Nov. 11, 2015) (finding that the

11   plaintiff was entitled to 18% interest against Organic Alliance); *Church Bros., LLC v. Garden of*

12   *Eden Produce, LLC*, No. 5:11-CV-04114 EJD, 2012 WL 1155656, at *3 (N.D. Cal. Apr. 5, 2012)

13   (finding that "[a]lthough interest normally accrues at the legal rate, the interest rate of 18% on

14   unpaid accounts agreed to by the parties in the contract created by the invoices is the correct rate

15   to apply to these transactions").   *See also Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1108

16   (9th Cir.1998) (in real estate context, "affirm[ing] the district court's grant of post-judgment

17   interest based upon the mutually agreed upon contract rate").   Accordingly, the Court finds that

18   Plaintiff here is entitled to an 18% annual rate for prejudgment and post-judgment interest, as

19   calculated above.

20                **b.  Attorney's Fees and Costs**

21        As previously discussed, Plaintiff has a contractual right to recover attorney's fees from

22   Organic Alliance and Booth.   Where a plaintiff has a contractual right to attorney's fees, the

23   plaintiff has a right under PACA to enforce the right to attorney's fees as part of the perishable

24   agricultural commodities contract.   *Middle Mountain Land*, 307 F.3d at 1224–25.

25        Courts in the Ninth Circuit calculate attorney's fees using the lodestar method, whereby a

26   court multiplies "the number of hours the prevailing party reasonably expended on the litigation

27   by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)

28

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1  (citation omitted).  A party seeking attorney's fees bears the burden of demonstrating that the rates

2  requested are "in line with the prevailing market rate of the relevant community." *Carson v.*

3  *Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (citation omitted).  Generally, "the

4  relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979

5  (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  Typically, "[a]ffidavits of the

6  plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

7  determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *U.*

8  *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

9          Here, Plaintiff submitted a declaration from Plaintiff's attorney June Monroe as well as

10  timesheets for Ms. Monroe and for Bart M. Botta, the senior partner at the firm where Ms. Monroe

11  works.  ECF No. 41-2 (Monroe Decl.) and Ex. 2 (timesheet).  Ms. Monroe's hourly rate was

12  $295.00 per hour until August 2015, when it was raised to $335.00 per hour.  ECF No. 41-2 ¶ 11.

13  Ms. Monroe states in her declaration that other attorneys specializing in PACA litigation with

14  comparable levels of experience bill their time at or above $350.00 per hour.  *Id.*  Mr. Botta's

15  hourly billing rate was $395.00 per hour.  *Id.*  Ms. Monroe and Mr. Botta were the only

16  timekeepers listed on Plaintiff's timesheets.

17          Courts have held that rates of $250 per hour to $370 per hour were reasonable for

18  attorney's fees in similar PACA cases.  *See Greenfield Fresh*, 2015 WL 1160584, at *4 (N.D. Cal.

19  March 13, 2015) (finding that attorney's fees ranging from $275 per hour to $370 per hour were

20  reasonable in a PACA case); *C.H. Robinson Co.*, 2007 WL 39311, at *4 (finding that $250 per

21  hour was reasonable for attorney's fees in a PACA case); *Sequoia Sales, Inc. v. P.Y. Produce,*

22  *LLC*, No. CV 10-575 CW (NJV), 2011 WL 3607242, at *9 (N.D. Cal. July 29, 2011) (finding

23  attorney's fees of $285 per hour to $350 per hour were reasonable in a PACA case).  In breach of

24  contract cases, courts in this District have approved hourly rates of $500 or more.  *See, e.g.*,

25  *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1069 (N.D. Cal. 2012) (finding an hourly rate of

26  $500 per hour reasonable in a breach of contract case).  In light of these cases and the declaration

27  submitted by Ms. Monroe, the Court concludes that Plaintiff's requested rates for Plaintiff's

28

20

United States District Court
Northern District of California

1    attorneys are reasonable.

2         The Court has reviewed counsel's declarations and timesheets, which contain descriptions

3    of each activity performed and list time worked in increments of hundredths of an hour.  The

4    Court finds Plaintiff's timesheets adequately detailed and related to the work required for this

5    litigation, but only up to a point.  On November 25, 2015, this Court identified several deficiencies

6    in Plaintiff's first motion for default judgment and denied that motion without prejudice.  ECF No.

7    35.  The deficiencies identified in the Court's November 25, 2015 order should not have been

8    present in Plaintiff's initial motion, and the fact that Plaintiff had to file the instant, renewed

9    motion does not entitle Plaintiff to *additional* attorney's fees.  Accordingly, the Court will only

10   allow Plaintiff to recover attorney's fees for time spent on the case up to and including November

11   24, 2015.

12        According to Plaintiff's records, from the time of pre-filing investigation in late 2014

13   through November 24, 2015, Mr. Botta billed 5.0 hours to this matter, and Ms. Monroe billed 20.2

14   hours.  It appears that Ms. Monroe did not bill her client for several time entries and that unbilled

15   time was not included in Plaintiff's request for attorney's fees.  *See, e.g.*, ECF No. 41-2 Ex. 2 at 1

16   (noting "no charge" next to 1/29/2015 entry worth $442.50).  Based on the amount counsel billed

17   through November 24, 2015, the court awards Plaintiff $7,321.00 in attorney's fees, corresponding

18   to $1,975 for Mr. Botta and $5,346.00 for Ms. Monroe.

19        Plaintiff also requests costs totaling $2,586.25, calculated as $400.00 for the civil filing

20   fee, plus $500.00 for the U.S. Department of Agriculture filing fee, plus $1,686.25 in process

21   server fees.  ECF No. 41-2 (Monroe Decl.) ¶ 15.  The Court finds that the requested filing fees

22   totaling $900.00 are allowable under 28 U.S.C. § 1920.  The Ninth Circuit has held that "private

23   process servers' fees are properly taxed as costs." *Alflex Corp. v. Underwriters Labs., Inc.*, 914

24   F.2d 175, 178 (9th Cir. 1990) (per curiam).  In this case, however, Plaintiff has not submitted any

25   invoices or other explanation for how Plaintiff spent $1,686.25 in process server fees.

26   Accordingly, the court limits Plaintiff's recoverable costs to $900.00 for Plaintiff's filing fees paid

27   to the Court and to the USDA.

28

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment as to Organic Alliance and Parker Booth.  The Court enters judgment against Organic Alliance and Parker Booth for $121,954.73, corresponding to $73,058.50 for the unpaid invoice value of the produce, $40,675.23 in prejudgment interest, $7,321.00 in attorney's fees, and $900.00 in costs. Post-judgment interest on the principal amount of $73,058.50 shall accrue at a rate of 18% per annum until paid.

**IT IS SO ORDERED.**

Dated: March 24, 2016

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

Case No. 15-CV-01951-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT